Pettingell, P. J.
Action by an employee to recover from her employer, in accordance with General Laws (Ter. Ed.) Chapter 151, section 1, the amount due her as “a *314 wage fairly and reasonably commensurate with the value of the service or class of service rendered”, less the amounts actually paid her by the employer as the weekly wage at which she was employed.
The plaintiff’s declaration sets forth that the plaintiff was employed at a wage of nine dollars a week and that that amount was “oppressive and unreasonable” wages as set forth in General Laws, Chapter 151, Sec. 1, and that “fifty cents an hour or $27.50 per week of 55 hours” was “the fair and reasonable value of her services.”
The defendant set up a general denial and payment.
The trial judge made the following “Findings of Facts and Findings.”
“I find that the plaintiff worked for the defendant as an elevator operator in an office building in Haverhill, Massachusetts for 47 weeks beginning in February 1941 and ending in January 1942 and received therefore the sum of nine dollars per week; that the said wages of nine dollars per week were oppressive and unreasonable in all the circumstances, being both less than the fair value of her services and less than sufficient to meet the minimum cost of living necessary for her health.
“I. further find that a fair wage for the plaintiff’s services would have been twelve dollars per week, which I find would also represent the minimum neees- . sary for her health.
Finding
“I find for the plaintiff for $141.00 plus interest from February 12, 1942, seventy-five cents, making $141.75.”
The case comes to this division because of the defendant’s claim of error based on the giving of seven requested-rulings, filed by the plaintiff, as follows:
2. That if the Court finds that the amount paid by the defendant to the plaintiff as a woman elevator operator, as wages is less than the fair and reason *315 able value of the services rendered by the plaintiff and is less than sufficient to meet the minimum cost of living necessary for her health then the plaintiff is entitled to recover the fair and reasonable value of her services less any amount actually paid to the plaintiff by the defendant.
3. That if the Court finds that the amount paid by the defendant to the plaintiff as a woman elevator operator, as wages is oppressive and unreasonable wage; then the plaintiff is entitled to recover the fair and reasonable value of her services less any amount actually paid to the plaintiff by the defendant.
4. That an oppressive and unreasonable wage is a wage which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health G. L. Chpt. 151, Sec. 2, Acts of 1937 Chpt. 401, Sec. 1-2.
5. That any contract or agreement or understandings for or in relation to any employment of the plaintiff by the defendant as a woman elevator operator for wages which are oppressive and unreasonable is null and void Sec. 2, Chpt. 151.
9. That the fact that a mandatory minimum fair wage order for women elevator operators has not been established is not a bar or a defence to the plaintiff’s right to recover.
10. That upon all the evidence a finding is warranted that the plaintiff is entitled to recover.
11. That upon all the evidence a finding is warranted that the wages paid to the plaintiff by the defendant was oppressive and unreasonable wage.
A proper disposition of the case requires a consideration of the statute under which the action is brought, its purpose and history. It appeared first as St. 1912, Chapter 706, and was amended by St. 1913, Chapters 330 and 673, and St. 1914, Chapter 368. Thus amended, the statute provided for the appointment of a minimum wage commission with power “to inquire into the wages paid to the female employees in any occupation in the Commonwealth, *316 if the commission has reason to believe that the wages paid to a substantial number of such employees are inadequate to supply the necessary cost of living and to maintain the worker in health”. The statute then authorized the commission to investigate and to form a wage board which shall consider the matter, and after taking into consideration “the needs of the employees, the financial condition of the occupation and the probable effect thereon of any increase in the minimum wages paid”, “shall endeavor to determine the minimum wage ***** suitable for a female employee of ordinary ability in the occupation in question”, and report the same, with specified alternate facts, to the commission “together with the reasons therefor and the facts relating thereto,” with certain other information including the names of employers who pay less than the minimum wage, the commission having the right, in the last instance, to publish the names of such employers.
In Holcombe v. Creamer, 231 Mass. 99, which arose when certain employers refused to furnish the commission with required information, the court held that the act was constitutional and ordered a writ to issue compelling testimony. Every issue which could be raised regarding the constitutionality and legality of that statute was passed upon at that time in favor of the statute.
Following that decision, an amending statute was passed, Statute 1937, Chapter 401, which is the present General Laws (Ter. Ed.) Chapter 151, the" basis of this action. That statute went much farther than the original statute. It declared a contract to pay wages that are “oppressive and unreasonable”, as defined in the statute, to be null and void, and after elaborating the procedure by which investigations are to be made and information acquired, provided for the establishment of minimum wages, and *317 the publication of the orders determining the same. Section 10 of the chapter provides a procedure to be followed in cases where there is a persistent non-observance of an order published under Section 8. Section 11 provides a manner of enforcing the attendance of employers, of hearings and of publication of the names of those who have failed to observe the orders, published in accordance with the provisions of the statute. Other sections provide appropriate penalties for such violations.
The sections of Chapter 151 which thus far have been considered deal with the procedure of the public authorities with relation to employers. Section 20 of the statute provides a personal remedy. It gives to an employee the right to recover in a civil action “the full amount of such minimum wage less any amount actually paid” to such employee by the employer. Any agreement by which the employee contracts “to work for less than such mandatory minimum fair wage shall be no defence to such action”.
Section 20A provides that “In any prosecution under section 19 or in any action or suit under section twenty, a copy of the mandatory order covering any occupation” properly attesting the execution and existence of the order shall be competent evidence.
Minimum wage control is no part of the Common law. It is clearly an innovation created by statute, intended to provide better living conditions for women and children. Like many other statutory innovations in employment it has been bitterly opposed by those of conservative mind. Despite the opposition arising from this point of view, the movement represented in Massachusetts by Chapter 151 and the decision in Holcombe v. Creamer, 231 Mass. 99 has made marked progress. One reading the signs of the times and considering all the aspects of the labor situation realizes that this particular legislation is definitely *318 to be a part of our jurisprudence despite the decision of the United States Supreme Court in 1923, in Adkins v. Childrens Hospital, reported in 24 A. L. R 1238. In his dissenting opinion in that case, Mr. Justice Holmes states clearly what the law probably will be held to be by some future decision of that tribunal. That decision held that Congress has no power to legislate on the subject. No decision has limited the power of the individual states as to such legislation and Holcombe v. Creamer, supra, is unquestionably the law of the Commonwealth.
General Laws, (Ter. Ed.) Chapter 151, dealing with a subject outside the common law, enacts a procedure covering all aspects of the subject of the legislation. It provides a commission, investigations by that commission, orders of the commission following a consideration of the evidence acquired, methods of enforcing the orders thus made, penalties for violation of such orders, and a method by which employees may recover at law the difference between wages actually paid and the wages established by order of the commission. Nowhere in the statute are the courts of the Commonwealth mentioned except in those sections which deal with enforcement of the penalties or rights created by the action of the commission. In no part of the statute are the courts of the Commonwealth given any authority to determine what is “a fair wage” or to make “a mandatory order” to that effect.
“It is a general principle that, when legislation covers the entire field,' previous provisions of either the common or statutory law in conflict therewith become no longer operative.” Commonwealth v. Commissioner of Banks, 240 Mass., 244 at 250, 251. O’Connor v. Boyden, 268 Mass. 111, at 114. Knowlton v. Swampscott, 280 Mass. 69, at 71. Commissioner of Banks v. Highland Trust Co., 283 Mass. 71, at 73. Cassidy v. Truscott, 287 Mass. 515, at 520, 521.
*319 By the statute all minimum wages matters are to be passed upon by a commission provided for by the statute. No provision is made for proceedings dealing with this subject by any other body. The statute clearly manifests an intent to that effect. Whalen v. Worcester Electric Light Co., 307 Mass. 169, at 174. Parties who have contracted regarding such matters have lost their right to resort to the processes of the courts as usual and must proceed as provided for in the statute. Salisbury v. Salisbury Water Supply Co., 279 Mass. 204, at 206. If Chapter 151 does not include a right of action such as the plaintiff has attempted to use, none can be implied. Foynes v. New York Central Railroad, 276 Mass. 89, at 91. All matters covered by the statute must follow the statutory procedure. Hull v. Belmont, 309 Mass. 274, at 279, 280.
There is no way by which the fact finding procedure required by the statute with its investigations, recommendations, orders and publication can be superseded by the shorter, more summary trial of a case in the District Court, with notice to no one but the individuals concerned in a particular contract. Trials of actions in the district courts, such as the one under consideration, would result in an uneven, unbalanced administration of the law without adequate investigation and information and a restricted understanding of the broad problems involved, or the different points of view caused by varying conditions of trade and locality.
The careful review of the whole field of employment, the probable effect upon other parts of the industry of an enforced raise in wages in one part thereof, the study and comparison of the experience of other employers in the same field, have no place in the ordinary trial of an action at law between employee and employer. Only such evidence, sure to be partial in amount and limited as to locality, as the parties themselves can secure, will be pre *320 seated to the court, and the intricate machinery set up by the statute will remain idle and unused.
The plaintiff’s argument is that General Law (Ter. Ed.) Ch. 151, section 1, makes a contract, such as is sued on here, null and void, and leaves the plaintiff to a recovery on a qucmhtm meruit. The answer to this contention is that the contract referred to in section 1 as the basis of a suit is one which has been found to be “oppressive and unreasonable” in accordance with the terms of this statute. It does not refer to or include a finding to that effect made by any other board, court or agency, but to a finding made by the commission in accordance with sections 4, 5, 6, 7 and 8 of the statute. Section 20, the only section of .the statute which authorizes a personal action by an employee, specifically limits the action to cases in which the employee is entitled to compensation “under or by virtue of a minimum fair wage order”.
It was prejudicial error to give the plaintiff’s ninth requested ruling. It was prejudicial error, also, to .give any of the rulings requested by the plaintiff,. for the reason that the court had no jurisdiction of the cause of action, and no reason to consider the requests. The absence of jurisdiction is a matter of which this court should and does take notice. Hey v. Prime, 197 Mass. 474, at 475. Fourth National Bank v. Mead, 214 Mass. 549, at 550, 551. Eaton v. Eaton, 233 Mass. 351, at 364. Paige v. Sinclair, 237 Mass. 482, at 483. Lonergan v. American Railway Express, 250 Mass. 30, at 40. Holt v. Holt, 253 Mass. 411, at 414. Moll v. Wakefield, 274 Mass. 505, at 507. Connolly v. Phipps, 283 Mass. 584, at 586. Jones v. Jones, 297 Mass. 198, at 202. Golden v. Crawshaw, 302 Mass. 343, at 344. Lord v. Cummings, 303 Mass. 457, at 458. Kennedy v. Consolidated Motor Limes, Inc., Mass. Advance Sheets 1942, 1231 at 1235, 1236.
Finding for the plaintiff vacated. Judgment to be entered for the defendant.